UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT P. SHORTER, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, <br><br> Respondent. | CAUSE NO.: 3:22-CV-177-JD-MGG |

OPINION AND ORDER

Robert P. Shorter, a prisoner without a lawyer, filed an amended habeas corpus petition challenging his 2019 drug-dealing conviction in Madison County under case number 48C04-1807-F2-1909. (ECF 4.) For the reasons stated below, he has not demonstrated an entitlement to habeas relief.

I.   BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct unless Mr. Shorter rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> In June 2018, the Anderson Police Department received an anonymous complaint that Shorter and Lewis Martin had traveled from Detroit to Anderson to sell drugs. On July 18, 2018, a confidential informant for the Anderson Police Department contacted Shorter to purchase methamphetamine. Shorter at first agreed to sell the informant methamphetamine, but later informed her that he could only sell her heroin and told her to contact Martin if she wanted methamphetamine. Shorter gave the informant Martin's contact information and put her in touch with Martin so she could arrange a purchase of methamphetamine

from him. Later that same day, per Martin and the informant's arrangement, the informant met Martin at the predetermined location and gave him $200 in exchange for seven grams of methamphetamine.

The same day, after this first transaction, the informant contacted Shorter again requesting to purchase heroin. Shorter agreed to sell seven grams and gave the informant a residential address where she would meet him to purchase the heroin. The informant went to the address and met up with Shorter; the two went into the kitchen, where Shorter removed a package of drugs from a cabinet, weighed out the seven grams he had agreed to sell, and then exchanged the heroin for money from the informant. Following the exchange, Shorter "made [the informant] do the heroin" that was left sitting on the table, and though she tried to "wipe[ ] it off the table without him knowin'," she did end up "gettin' some in [her] nose." As a result, after the buy, officers immediately transported the informant to be medically examined.

On July 23, 2018, Shorter called the informant asking for help "to get him out of town." He told her he "was scared and paranoid" and that he "knew everybody was looking for him because . . . all [his] locations had . . . been hit," and he wanted "someone he could trust" to help him leave town. Shorter disclosed his location, which the informant then provided to officers. When officers arrived at the location, the front door was open and they could observe Shorter, who was still wearing the same clothing he wore when he sold heroin to the informant, sitting on a couch inside. The officers surveilled and observed him for about twenty to thirty minutes before Shorter exited the residence, walked a few feet toward a detached garage while "looking very intently at the ground," and eventually stopped and bent over a few feet away from the garage, in a manner "very similar to someone who was bent over . . . tying their shoes but you just couldn't see [his] hands." Shorter then stood up and walked back into the residence.

Officers on the scene continued observing the residence for another fifteen minutes or so until additional uniformed officers arrived; during that time, nobody else was observed entering or exiting the residence. Once the additional officers arrived, officers approached the residence and instructed Shorter to put his hands up, at which point Shorter complied and stood up, and "threw a large amount of money up in the air" that had been in his hands. Officers then arrested Shorter without incident.

Holly Brewer, the primary resident of the home at which officers apprehended Shorter, consented to a search of the residence. A K-9 unit

2

> conducted a sweep of the exterior of the residence and the K-9 alerted at a spot outside the detached garage, around the place where officers had observed Shorter bent over. Officers noticed that a rock or stepping stone where the K-9 alerted "wasn't in the ground like the rest of em'" and turned it over, discovering underneath it a sock containing a bag of methamphetamine and a bag of a mixture of heroin and diphenhydramine. A search inside the residence produced a digital scale with white residue on it and baggies on the table where Shorter had been sitting.
>
> Officers had been unable to obtain a warrant for Shorter's arrest after the controlled heroin buy because they had no personal identifiers for Shorter necessary for obtaining a warrant. Officers nonetheless believed they had probable cause to arrest Shorter based on the controlled buy. In an interview with officers, Shorter provided a false name and identification and made several incriminating statements. After being told that the interviewing detective was working narcotics, Shorter admitted that he knew Martin, knew where Martin was located, and that Martin "brought [him] down here" and "made [him] work." The detective told Shorter he would be charged with dealing heroin and that officers had purchased heroin from him, to which Shorter merely responded "[s]h*t." Shorter never denied selling the drugs, and instead told the detective that he "didn't deal[ ] to you man" and "you don't look like nobody I sellin' that to."

*Shorter v. State*, 151 N.E.3d 296, 299-301 (Ind. Ct. App. July 6, 2020) (headnotes, internal citations, and footnotes omitted).

Prior to trial, Mr. Shorter moved to suppress his statements and other evidence surrounding his arrest on Fourth Amendment grounds. *Id.* at 301. The trial court denied the motion. *Id.* A jury trial was held, and he was convicted of dealing in methamphetamine; dealing in a narcotic drug; conspiracy to deal in a narcotic drug; and aiding, inducing, or causing the dealing of methamphetamine. *Id.* He was sentenced to an aggregate term of 23 years in prison. *Id.*

On direct appeal, he raised the following arguments: (1) his warrantless arrest and the warrantless entry into his residence were unlawful under the Fourth Amendment and Indiana law, such that evidence obtained as a result of these actions should have been suppressed; and (2) the evidence was insufficient to support his conviction. *Id.* at 301-305. The majority of a three-judge panel of the Indiana Court of Appeals rejected these arguments, concluding that there were exigent circumstances justifying the officers' actions in arresting Mr. Shorter without a warrant and that the owner of the residence, Ms. Brewer, had consented to the search. *Id.* at 302-305. *Id.* The majority also found sufficient evidence to support his conviction and affirmed in all respects. *Id.* at 306-308. One judge on the panel dissented, concluding that the officers' actions in arresting Mr. Shorter and searching his home without a warrant were not justified by exigent circumstances. *Id.* at 308-311. The dissenting judge voted to affirm the counts stemming from the drug sales to the confidential informant and to reverse the remaining counts. *Id.* at 311. Mr. Shorter sought transfer to the Indiana Supreme Court reasserting his search and seizure claims premised on the Fourth Amendment and Indiana law. (ECF 10-7 at 2-17.) The court heard oral arguments (ECF 10-2 at 8) but ultimately denied the petition, with one justice voting to grant the petition. *Shorter v. State*, 160 N.E.3d 510 (Ind. 2020).

During the pendency of the direct appeal proceedings, Mr. Shorter filed a pro se post-conviction petition in the state trial court. (ECF 10-9.) Notice was served on the public defender, who appeared and requested a stay of the case. (*Id.* at 3-4.) That request was granted, and the case remains stayed. (*Id.* at 4.)

4

In March 2022, Mr. Shorter sought federal habeas relief. (ECF 1.) His amended petition contains three claims. (ECF 4 at 3-4.) Claims one and three both argue that his warrantless arrest and the warrantless search of his residence violated the Fourth Amendment.[1] (*Id.*) Claim two asserts that the evidence was insufficient to support his conviction. (*Id.* at 3.) The respondent filed a return to the petition, arguing that claims one and three are not cognizable on federal habeas review and that claim two is procedurally defaulted. (ECF 10, 11, 12.) Mr. Shorter filed a traverse in support of his petition. (ECF 18.)

II.     ANALYSIS

Mr. Shorter's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and quotation marks omitted). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

---

[1] Although he separates the claims, it is evident that he is arguing within both claims that the police needed a warrant to arrest him and to enter and search his residence because there were no exigent circumstances. (ECF 4 at 3-4.)

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Hoglund*, 959 F.3d at 832 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A.   Fourth Amendment Claims

Claims one and three are different iterations of the same claim: That his warrantless arrest and the warrantless entry into his residence violated the Fourth Amendment, such that evidence obtained as a result of these actions should have been suppressed. (ECF 4 at 3-4.) The respondent argues that these claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976). (ECF 10 at 7.)

In *Stone*, the U.S. Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. That is because the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009) (citation and quotation marks omitted). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it "deflects the truth-finding process and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87. In habeas proceedings, the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

Therefore, federal habeas courts are barred from considering Fourth Amendment claims that were fully and fairly litigated in state court. *Id.*; *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013). "A state court process that amounts to a sham would not constitute a full and fair hearing even though the petitioner had his day in court on the claim." *Monroe*, 712 F.3d at 1106. Thus, determining whether claims are barred under *Stone* requires the court to "give at least *some* attention to how the state court dealt with

7

the merits of the claim." *Id.* (citation and internal quotation marks omitted). But the Seventh Circuit has cautioned that a federal court must not give the state court's merits analysis "too much attention," for the court's "role is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Id.* As the Circuit has explained:

> *Stone* would not block habeas review if the judge had his mind closed to the necessity of a hearing, or was bribed, or decided . . . that probable cause is not required in Illinois, or was sleepwalking . . . , or in some other obvious way subverted the hearing. *Hampton* does not mean, however, that federal courts will examine whether the judge seemed to have done some quality preparation for the hearing or had a perfect understanding of the fine points of search and seizure law. Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . In short, 'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result.

*Cabrera v. Hinsley*, 324 F.3d 527, 531–32 (7th Cir. 2003) (citing *Hampton v. Wyant*, 296 F.3d 560 (7th Cir. 2002)).

Mr. Shorter did not respond to the state's *Stone* argument in his traverse and instead continues to press the merits of his Fourth Amendment claims. (ECF 18 at 1-4.) Nevertheless, the record reflects that he received a full and fair opportunity to litigate his Fourth Amendment claims in state court. As recounted above, he raised Fourth Amendment claims prior to trial, and the trial court held a hearing on the motion before

8

rejecting his arguments, concluding that even though a warrant is generally required, the police officers' actions were justified under the circumstances.[2] (ECF 12-2 at 179-84.)

He raised Fourth Amendment claims again on direct appeal, arguing that his warrantless arrest and the warrantless search of his residence violated the Fourth Amendment. The Indiana Court of Appeals thoroughly analyzed the facts and looked to applicable Fourth Amendment principles to resolve these claims.[3] *Shorter*, 151 N.E.3d at 301-08. The court recognized that a warrant is required to enter a suspect's home to make an arrest, but concluded that exigent circumstances excused the lack of a warrant in this case; among other things, Mr. Shorter had asked the confidential informant for help "to get him out of town," officers knew he had come from Michigan and had few ties to the local community, and officers did not know his real name. *Id.* As for the search, the court concluded that the owner of the home, Ms. Brewer, had consented to the search, making it lawful. *Id.* at 302 n.7. There is "no indication" that the state court was "careless of [petitioner's] right to present his claim," *Cabrera*, 324 F.3d at 532, and its holdings are in accord with Fourth Amendment jurisprudence. *See Payton v. New York*, 445 U.S. 573 (1980) (warrantless entry into suspect's residence to make an arrest is not proper unless there are exigent circumstances or consent); *United States v. Matlock*, 415

---

[2] Mr. Shorter's counsel stipulated to the facts surrounding the Fourth Amendment issues, obviating the need for an evidentiary hearing, but the trial court heard arguments from counsel as to whether those facts demonstrated an adequate basis for the warrantless entry and search of his residence. (ECF 12-2 at 184.)

[3] Mr. Shorter also presented his claims to the Indiana Supreme Court, which denied the petition to transfer. Although the court did not issue an opinion explaining its reasoning, the court apparently gave the matter close consideration, as it heard oral arguments before denying the petition, and one justice dissented from the denial. *Shorter v. State*, 160 N.E.3d 510 (Ind. 2020).

U.S. 164, 164 (1974) (warrantless search of residence is proper even though consent is not given by the defendant, where consent is obtained from a third party who possesses common authority over or other sufficient relationship to the residence sought to be inspected).

Mr. Shorter does not argue that he was denied a full and fair opportunity to litigate his Fourth Amendment claims in state court. Rather, he asks this court to reweigh the evidence and make its own determination of whether Fourth Amendment violations occurred, which is a "path that *Stone* closes." *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Therefore, claims one and three do not entitle him to habeas relief.

B. Sufficiency of the Evidence Claim

In his remaining claim, Mr. Shorter argues that the evidence was insufficient to support his conviction. (ECF 4 at 4.) The respondent argues that this claim is procedurally defaulted. (ECF 10 at 7-8.)

Before considering the merits of a claim contained in a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court with respect to that claim. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must "fairly present" his constitutional claim in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of

last resort, which in Indiana is the Indiana Supreme Court. *See Boerckel*, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when that claim was presented to the state courts and denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts. *Davila*, 137 S. Ct. at 2064; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

As the respondent argues, Mr. Shorter did not present his sufficiency of the evidence claim in one complete round of state review. Although he raised it with the Indiana Court of Appeals, he did not include this claim in his petition to transfer filed with the Indiana Supreme Court. (*See* ECF 10-7.) The claim is therefore procedurally defaulted.[4] *Boerckel*, 526 U.S. at 848.

In his traverse, Mr. Shorter appears to argue that the court should review this claim under the actual innocence exception.[5] (ECF 18 at 7.) Under this exception, a "convincing showing of actual innocence enable[s] habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual

---

[4] Although Mr. Shorter has not yet completed the post-conviction review process, under Indiana law he would not be able to raise a claim regarding the sufficiency of the evidence in that proceeding if the claim was known and available to him at the time of his direct appeal. *See Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (under Indiana's post-conviction statute "[t]he scope of the relief available is limited to issues that were not known at the time of the original trial or that were not available on direct appeal"). Here, the issue was clearly known and available at the time of his direct appeal, as he raised it with the Indiana Court of Appeals; he simply did not complete the process by including the claim in his petition to transfer to the Indiana Supreme Court.

[5] He also references the equitable tolling doctrine, but that doctrine pertains to the timeliness of a petition. *See McQuiggin v. Perkins*, 569 U.S. 383, 391-92 (2013). The respondent has not argued that the petition was untimely.

innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes*, 403 F.3d at 938 (a petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is demanding and can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Other than broadly invoking the exception, Mr. Shorter does not point to any new evidence—much less powerful or reliable evidence—to demonstrate that he is factually innocent of the drug-dealing and conspiracy charges. Instead, he points to the Indiana appellate judge's dissenting opinion concluding that his Fourth Amendment rights were violated. These are the same claims he asserts in his petition, and "it is 'doubtful' that a petitioner's actual innocence claim and claim for relief on the merits can be the same." *Lund v. United States*, 913 F.3d 665, 668 (7th Cir. 2019) (citation omitted).

Regardless, the judge's dissenting opinion is not new "evidence," nor would a Fourth Amendment violation committed by police prove his actual innocence. To the contrary, the Supreme Court has recognized that the Fourth Amendment exclusionary

12

rule "deflects the truth-finding process and often frees the guilty." *Stone*, 428 U.S. at 490. He offers nothing to undercut the factual underpinnings of his conviction, namely, the drug evidence found in his residence, the recordings of the controlled buys, the testimony of police regarding his actions during their surveillance, and his own inculpatory statements. He points to video evidence introduced at trial, claiming that the person in the video is not him. However, evidence presented at trial and considered by the jury is not considered "new" for purposes of an actual innocence claim. *See Santiago v. Streeval*, 36 F.4th 700, 707 (7th Cir. 2022) (holding that petitioner must present "new reliable evidence . . . *that was not presented at trial*" to prove actual innocence) (emphasis added). He has not satisfied the demanding actual innocence exception.

Assuming for the sake of argument that he could overcome the procedural default barrier, the respondent alternatively argues that the claim fails on the merits. (ECF 10 at 8-12.) Under the Due Process Clause of the Fourteenth Amendment, a defendant cannot be convicted unless the state proves all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). When considering a sufficiency of the evidence claim, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). On habeas review, the court's role is limited, and it is not permitted to reweigh the evidence or substitute its judgment for that of the finder-of-fact. *See id.*; *Ford v. Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997).

On direct appeal, Mr. Shorter argued that the evidence was insufficient to support his conviction. In considering this claim, the Indiana Court of Appeals applied a standard consistent with *Jackson*.[6] *Shorter*, 151 N.E.3d at 305. The court thoroughly considered the facts and concluded that the evidence was sufficient. Mr. Shorter has not shown that this determination was unreasonable.

To convict him of dealing in methamphetamine, the state was required to prove that he possessed methamphetamine with the intent to deliver it or finance the delivery of it. IND. CODE § 35-48-4-1.1(a)(2). Similarly, to convict him of dealing in a narcotic drug, the state was required to prove that he possessed heroin with the intent to deliver it or finance the delivery of it. IND. CODE § 35-48-4-1(a)(2). Under state law, possession can be either "actual or constructive." *Shorter*, 151 N.E.3d at 305. "A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Id.*; *see also Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

The state court found the evidence sufficient to show constructive possession of the drugs found in the ground near his residence based on the officers' observations of him during their surveillance, his statements to the confidential informant, and the other evidence of drug-dealing (including a digital scale, baggies, and large amounts of

---

[6] The Indiana Court of Appeals summarized the applicable standard as being that it would affirm "unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt." *Shorter*, 151 N.E.3d at 305. Although the court cited to a state case rather than to *Jackson*, a state court need not cite to or even be aware of applicable Supreme Court case law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). The state court's decision does not contradict Supreme Court precedent.

14

cash) found in his residence. *Id.* at 306. Mr. Shorter appears to argue that the evidence was insufficient because there was no evidence of his "actual possession" of drugs at the time of his arrest, but under state law, evidence of his constructive possession was enough to convict. *See id.* at 305. He has not shown that the state court unreasonably applied *Jackson* or made an unreasonable determination of the facts with respect to these charges.

To convict him of conspiracy to commit dealing in a narcotic drug, the state was required to show that he agreed with Martin to commit that felony with the intent to commit dealing in a narcotic drug. IND. CODE § 35-41-5-2(a). For the "aiding" offense, the state was required to show that he knowingly or intentionally aided, induced, or caused Martin to commit dealing in methamphetamine. IND. CODE § 35-41-2-4. The state court found the evidence sufficient, pointing to his statements to the confidential informant initially agreeing to sell her methamphetamine, but then telling her to contact Martin and providing Martin's contact information. *Shorter*, 151 N.E.3d at 307. The informant subsequently arranged and completed a controlled buy of methamphetamine from Martin. *Id.* Mr. Shorter also made statements to the police acknowledging that he knew Martin and was working with him to sell drugs. *Id.*

Mr. Shorter again argues that the evidence was insufficient because he did not have drugs on his person or within his reach at the time of his arrest, but this is not an element of either charge. (*See* ECF 18 at 4-5.) The drugs and drug paraphernalia found at his residence, the controlled buys, and his incriminating statements to the informant and police were sufficient evidence to support his conviction. He has not demonstrated

15

that, viewing the evidence in the light most favorable to the prosecution, no reasonable factfinder could have found him guilty of the drug-dealing offenses. *Jackson*, 443 U.S. at 319. Thus, even if the court could reach claim two, it would not entitle him to habeas relief.

      C.      Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons outlined above, Mr. Shorter' claims do not entitle him to federal habeas relief. His Fourth Amendment claims are not cognizable under *Stone*, and his sufficiency of the evidence claim is procedurally defaulted and otherwise without merit under AEDPA standards. The court finds no basis to conclude that jurists of reason would debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III.    CONCLUSION

For these reasons, the amended petition (ECF 4) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on October 7, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT